UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: ROGER JOHN TRAVERSA<br>    Debtor | : | |
| | : | |
| ROGER JOHN TRAVERSA,<br>    Debtor-Appellant, | : | CIVIL ACTION NO.<br>3:10-CV-876 (JCH) |
| v. | : | |
| EDUCATION CREDIT MANAGEMENT<br> CORPORATION,<br>    Creditor-Appellee. | : | NOVEMBER 5, 2010 |

## RULING ON DEBTOR'S APPEAL

In an adversary proceeding before the Bankruptcy Court (Weil, C.J.), Appellant Roger John Traversa sought discharge of student loan debt. Section 523(a)(8) of the Bankruptcy Code permits discharge of certain student loan debt only upon a showing that failure to discharge would cause "undue hardship." 11 U.S.C. § 523(a)(8). Following trial of the issue, the Bankruptcy Court held that Traversa failed to meet this standard. Accordingly, the Bankruptcy Court held that the student loan debt was not discharged and entered final judgment. Traversa appealed, challenging the Bankruptcy Court's decision on the merits, as well as certain collateral orders relating to his requests to seal the docket. For the reasons discussed below, the rulings of the Bankruptcy Court are affirmed.

**I. BACKGROUND**

    **A. The Debtor and the Loans at Issue**

The Bankruptcy Court found the following facts. See Bankruptcy Court Findings of Fact ("Findings"). Traversa received a Bachelor of Science degree from Western

Connecticut State University in 1990, a paralegal certificate from the Philadelphia Institute for Paralegal Training in 1993, and a juris doctorate from Widener University School of Law in Wilmington, Delaware in 2002. Traversa has been admitted to the practice of law in the State of Pennsylvania since April 2003.

In order to pay for law school, Traversa took out a number of loans. At issue before the Bankruptcy Court, and on this appeal, are certain of those student loans that have been consolidated into two loans held by Appellee Educational Credit Management Corporation ("ECMC"). The Bankruptcy Court found that as of December 12, 2006, shortly after Traversa filed for bankruptcy, the outstanding balances on these two loans were $26,358.31 and $33,588.86, or nearly $60,000 in total.

Prior to attending law school, Traversa had seven years of experience as a paralegal. He continued to work part-time as a paralegal during law school. Following law school, Traversa worked in temporary positions for a few months. He was then hired as a Director of Compliance Administration at AES Corporation, where he remained for about a year. After leaving AES in August of 2004, Traversa worked as a contracts representative for Northrop Grumman, but he was terminated from that position in December of 2004. Traversa has been unemployed since then. At the time of trial, Traversa's sole income consisted of Social Security benefits. He lived with his mother and had no dependents. Traversa testified that he has looked for employment diligently, without limitation to legal jobs.

### B. The Bankruptcy Court's Application of the <u>Brunner</u> Test

Section 523(a)(8) of the Bankruptcy Code exempts certain student loan debt from discharge in bankruptcy "unless excepting such debt from discharge under this

paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The Second Circuit has established that in order to meet this "undue hardship" standard, a debtor must make a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

Brunner v. New York State Higher Ed. Services, 831 F.2d 395, 396 (2d Cir. 1987).

Applying this standard, the Bankruptcy Court held that the first element was met. The court held that Traversa made a "prima facie case" that his current income was insufficient to meet his "needs for care, including food, shelter, clothing, transportation[,] medical treatment and a small source of recreation," and that ECMC had failed to rebut this showing. Bankruptcy Court Memorandum of Decision ("Decision") at 19 (quotation omitted).

In connection with the second element, Traversa testified that he is affected by certain medical conditions, including depression, attention deficit hyperactivity disorder, bipolar disorder, sleep apnea and narcolepsy. He testified that he was first diagnosed with depression in middle school, and that his "conditions have lasted most of [his] life, but in the past five to seven years they've gotten substantially worse." Findings at 9. Traversa's testimony indicated that his depression has varied in severity over that time, and that he has received a number of different treatments, including medications and therapy. Traversa also testified that these conditions affect him on a daily basis with

-3-

varying degrees of severity, that they can be mitigated, and that on "most occasions they can be dealt with medically . . . ." Id. Traversa testified that the medications he takes for depression have been "effective" and that the treatment of his sleeping disorders have helped to alleviate the symptoms of those conditions. Id. at 10.

Beyond the debtor's testimony, the record included little evidence going to the severity of Traversa's medical conditions or the prospects for treatment. Traversa did not present the testimony of a doctor or medical expert. He also did not provide medical records documenting a diagnosis for "bipolar disorder." Findings at 10. Traversa did offer some documents relating to determinations made by the Connecticut Department of Social Services ("DSS") and the Social Security Administration ("SSA"), as well as testimony from the DSS "eligibility service worker" assigned to Traversa's file. However, the Bankruptcy Court excluded the SSA documents because Traversa produced them on the eve of trial. Decision at 10-11. The documents relating to an "initial determination" by the DSS were admitted, but given little weight, because Traversa failed to produce related background documents, including his application to DSS and records of a subsequent "redetermination" by DSS. Id. at 9, 20.

The Bankruptcy Court held that the evidence in the record did not support a finding in Traversa's favor on prong 2 of the Brunner test. The court "substantially credited [Traversa's] testimony to the effect that he suffers from various conditions that negatively impact his ability to earn a living (at least as of the time of Trial)." Decision at 20. But it found this testimony inadequate:

> [W]hat is missing is a prima facie case as to prognosis (i.e., "persist[ence]"). The Debtor's testified as to his opinion of his prognosis. There may be some conditions as to which a

-4-

> debtor is competent to testify as to prognosis. However, the
> conditions described by the Debtor are such that he is not
> competent to testify as to prognosis.

Decision at 20-21. The court noted that "under appropriate circumstances, an agency determination could be sufficient to constitute at least a prima facie case on the second Brunner prong," but held that they did not do so here because parts of the agency determinations and their relevant background were not "properly of record." Id. at 20.

Having found that Traversa did not satisfy the second element of the Brunner standard, the Bankruptcy Court did not address the third element. Id. at 21.

### C. Motions to Seal

Concerned about disclosure of personal financial and medical information, Traversa filed numerous motions to seal that were denied in full or in part. A review of the rulings included in the record on appeal shows that, pursuant to 11 U.S.C. section 107(c)(1), the Bankruptcy Court granted a motion to seal in part with respect to sealing information that presented an "undue risk of identity theft," such as account numbers and social security numbers (Bankruptcy Doc. No. 80); denied motions based on 11 U.S.C. section 107(b)(2), which pertains to sealing "scandalous or defamatory matter" (Bankruptcy Doc. Nos. 105, 151); entered a confidentiality order limiting disclosure of discovery materials (Bankruptcy Doc. No. 151); and limited remote access via PACER or CM/ECF to certain documents containing "sensitive information" in order to reduce any risk that it might be accessed by potential employers (Bankruptcy Doc. No. 283).

### D. Issues on Appeal

Traversa raises five issues on appeal. First, the primary issue on appeal is the Bankruptcy Court's holding that Traversa had not met his burden of establishing the

second element of the Brunner standard. Traversa contends that the Bankruptcy Court "imposed an improper measure for undue hardship and the court's ruling should be overturned regarding the second prong of the Brunner standard." Appellant's Opening Brief (Doc. No. 8) ("Appellant's Br.") at 10. Second, Traversa challenges various collateral orders of the Bankruptcy Court denying in part or in full his motions to seal documents in the record. Id. Third, Traversa contends that the Bankruptcy Court's ruling with respect to the third Brunner prong "should be overturned because it does not comport with the fresh start policy of the Bankruptcy Code." Id. at 11. Fourth, Traversa objects to the Bankruptcy Court's decision to permit evidence of an offer of compromise. Id. Fifth, Traversa argues that the Bankruptcy Court applied the wrong standard under the first Brunner prong. Id.

### III. DISCUSSION

#### A. Issue I: Brunner Prong 2

The second prong of the Brunner standard requires that the debtor show "that additional circumstances exist indicating that this state of affairs [i.e., his inability to maintain a 'minimal' standard of living] is likely to persist for a significant portion of the repayment period of the student loans." Brunner, 831 F.2d at 396. The Bankruptcy Court credited Traversa's testimony "that he suffers from various conditions that negatively impact his ability to earn a living (at least as of the time of Trial)." Decision at 20. However, the Bankruptcy Court held that Traversa had not met his burden under prong two because he did not make out "a prima facie case as to prognosis (i.e., 'persist[ence]')." Id. In other words, the Bankruptcy Court found that Traversa had established circumstances explaining his present difficulty repaying his loans, but that

he had not established that these circumstances were "likely to persist for a significant portion of the repayment period of the student loans."

Traversa does not dispute the Bankruptcy Court's evidentiary rulings or the findings of fact underlying this holding. Instead, Traversa argues that the facts found by the Bankruptcy Court were sufficent, as a matter of law, to satisfy the prong 2's "additional circumstances" requirement. In support of his position, Traversa argues that the "undue hardship test is not a difficult threshold to pass," Appellant's Br. at 14, and specifically, that establishing a disability within the meaning of the Americans with Disabilities Act is sufficient to satisfy prong 2 of the Brunner test. See Appellant's Br. at 19-20. Because Traversa's appeal challenges the Bankruptcy Court's conclusions of law and its application of the law to the facts, the standard of review on appeal is de novo. Educational Credit Management Corp. v. Curiston, 351 B.R. 22, 27 (D. Conn. 2006).

Traversa's general argument that the Bankruptcy Code's "undue hardship" requirement sets a "low threshold" is based not on authorities applying the Bankruptcy Code, but instead on authorities applying the anti-discrimination provisions of Title VII. See Appellant's Br. at 15 (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977); Webb v. City of Philadelphia, 562 F.3d 256 (3d Cir. 2009); Baker v. Home Depot, 445 F.3d 541 (2d Cir. 2006); Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995)). In Hardison, for example, the Supreme Court interpreted the phrase "undue hardship" in the context of 1967 Equal Employment Opportunity Commission Guidelines, 29 C.F.R. section 1605.1, and the 1972 amendments to Title VII, 42 U.S.C. section 2000e(j). See Hardison, 432 U.S. at 69, 84.

These cases are not applicable here. In Brunner, the Second Circuit adopted a clear test for "undue hardship" as it is used in Bankruptcy Code section 523(a)(8). This test has been adopted by a majority of the circuits. See, e.g., In re Frushour, 433 F.3d 393, 400 (4th Cir. 2005) (following an "overwhelming majority of circuits" in adopting the Brunner test); In re Tirch, 409 F.3d 677, 680 (6th Cir. 2005); Educational Credit Management Corp. v. Polleys, 356 F.3d 1302, 1309 (10th Cir. 2004); In re Gerhardt, 348 F.3d 89, 91 (5th Cir. 2003); In re Rifino, 245 F.3d 1083, 1087 (9th Cir. 2001) In re Roberson, 999 F.2d 1132, 1135-36 (7th Cir. 1993). The case law applying this test makes clear that it imposes a heavy burden on the debtor seeking discharge of student debt. See, e.g., Frushour, 433 F.3d at 401 ("The second [Brunner] factor is . . . a demanding requirement . . . ."); Curiston, 351 B.R. at 29 ("[T]he additional circumstances element [of the Brunner test] sets a high standard of proof."); In re Kelly, 351 B.R. 45, 52 (Bankr. E.D.N.Y. 2006) ("Establishing undue hardship is a 'heavy burden' for any debtor.") (footnote omitted). Because the relevant standard is clear and well-established, recourse to cases applying the phrase "undue hardship" in an unrelated context is not necessary here.[1]

---

[1] To be clear, there is no inconsistency in the fact that the phrase "undue hardship" has been interpreted to impose a "heavy burden" in the context at issue here and a "low threshold" in another. The threshold at which hardship becomes "undue" depends on the nature of the countervailing interests and policy goals to be achieved. In Hardison, the Court held that "undue hardship" creates a low threshold in the context of Title VII because requiring employers to make accommodations can, in some cases, undermine Congress's anti-discrimination objective in Title VII. See Hardison, 432 U.S. at 85 ("In the absence of clear statutory language or legislative history, we will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath."). In contrast, courts have interpreted section 523(a)(8) of the Bankruptcy Code as imposing a heavy burden because doing so supports Congress's goal of increasing the availability of affordable student loans. See Brunner, 831 F.2d at 396 ("The further showing required by part two of the test is also reasonable in light of the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt."); Frushour, 433 F.3d at 400 ("This heightened standard protects the integrity of the student-loan program . . . ."); Roberson, 999 F.2d at 1135-36 (Proponents in Congress intended student lenders to "'rely[] for repayment solely on the debtor's future increased income

Traversa's more specific argument is also unavailing. Traversa contends that the "additional circumstances" requirement of Brunner prong 2 is met where the debtor shows the existence of a disability within the meaning of the Americans with Disabilities Act ("ADA"). Traversa contends that, because the Bankruptcy Court credited his testimony "to the effect that he suffers from various conditions that negatively impact his ability to earn a living (at least at the time of Trial)," (Decision at 20), Traversa established that he has a disability. He claims that the Bankruptcy Court erred by requiring proof that his disability is likely to persist and to continue to affect his ability to repay his loans over the long term. In effect, Traversa seeks recognition of a rule that proof of a disability within the meaning of the ADA is per se sufficient to satisfy the second element of the Brunner standard. Appellant's Br. at 25 ("The debtor must merely establish that a disability exists under the ADA definition to establish additional circumstances under the second prong of the Brunner standard.").

A disability certainly can be relevant under prong 2. See Brunner, 831 F.2d at 396 (explaining that prong 2 was not satisfied in that case because, among other things, the debtor "is not disabled, nor elderly, and she has–so far as the record discloses–no dependents"); Curiston, 351 B.R. at 31 (listing the debtor's "psychological and physical disabilities, which prevent full-time employment" as one of four factors jointly contributing to a showing under prong 2).

But the court could find no precedent treating proof of a disability to be, in itself, sufficient to discharge the debtor's burden under prong 2. To the contrary, courts

---

resulting from the education.' . . . Accordingly 'the dischargability of student loans should be based on the certainty of hopelessness, not simply a present inability to fulfill financial commitment.'") (citations omitted).

-9-

applying prong 2 have focused not only on the existence of a disability but on whether or not the disability was likely to pose a persistent obstacle to the debtor's employment. Compare In re Porrazzo, 307 B.R. 345, 348 (Bkrtcy. D. Conn. 2004) ("In contrast to those cases [where a medical condition was deemed inadequate to support discharge], the uncontested evidence here [including that of a clinical psychologist] is that the debtor is permanently disabled and unemployable."), and In re Kelsey, 287 B.R. 132, 144 (Bkrtcy. D.Vt. 2001) ("Based upon the testimony of the debtor and her psychiatrist, it is more likely than not that the debtor's debilitating condition [emotional and psychatric disability] will persist for a significant portion of the repayment period."), with In re Kelly, 351 B.R. 45, 54 (Bkrtcy. E.D.N.Y. 2006) (Although the debtor suffered from "depression and related emotional and psychological disorders," prong 2 was not met where the debtor's doctor acknowledged that "she would likely be highly functional in the future.").

Because prong 2 focuses on whether or not the circumstances interfering with repayment are "likely to persist," inquiry into the prognosis of an alleged disability is perfectly appropriate, if not essential. As the Second Circuit explained in Brunner, "[r]equiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" Brunner, 831 F.2d at 396.

Traversa claims that the inquiry into the prognosis of a disability somehow "violates the Americans with Disabilities Act." Appellant's Br. at 21-22. Traversa emphasizes that Congress amended the ADA to make clear that a person who establishes that he is "disabled," within the meaning of the statute, should still be

considered disabled even if his "conditions were in full remission or successfully treated."  Appellant's Br. at 24 (citing 42 U.S.C. § 12102(4)).  But this point is relevant only given the assumption that establishing an ADA disability is sufficient to meet Brunner prong 2.  Traversa offers no authority for that assumption.  The issue before the court is not whether Traversa is disabled, but whether Traversa has established circumstances indicative of a "continuing inability to repay over an extended period of time."  Brunner, 831 F.2d at 396.  Furthermore, assuming that Traversa is correct about the ADA amendments, this would only make it more clear that proof of an ADA disability is not sufficient on its own to carry the debtor's burden under prong 2.  Brunner prong 2 is focused on the debtor's future financial and employment outlook.  Traversa's position is that having a disability has little or nothing to do with one's future outlook.  Assuming that he is right, this would only highlight that proof of disability is not, in and of itself, sufficient to carry the debtor's burden under Brunner prong 2.

Here, the Bankruptcy Court found that Traversa had, for many years, been capable of demanding and remunerative work, regardless of his conditions.  Traversa testified that he was diagnosed with depression "in middle school" and had been dealing with his conditions "throughout [his] life."  Findings at 8-9.  Yet, Traversa is a college graduate who completed law school in two and a half years.  Findings at 8.  Prior to law school, he spent seven years working as a paralegal, holding consecutive positions for years at a time.  Findings at 11.  In light of these findings, the Bankruptcy Court correctly held that more was needed to show a "continuing inability to repay over an extended period of time."  Brunner, 831 F.2d at 396.

Finally, the Bankruptcy Court correctly determined that evidence other than

Traversa's testimony was required to carry this burden. The Bankruptcy Court held that "the conditions described by the Debtor are such that he is not competent to testify as to prognosis." Decision at 21. The Bankruptcy Court's holding was limited, recognizing that in some cases prognosis can be established without medical expertise. Id. In addition, the Bankruptcy Court did not require that Traversa produce expert testimony. The court noted that Traversa might have carried his burden through submission of records of determinations by public agencies, letters from treating physicians, and other medical records. Decision at 20 & 21, n.25. Despite these options, Traversa failed to create a record that would support the court in finding that his current inability to find employment is likely to persist. Accordingly, the Bankruptcy Court's holding that Traversa did not carry his burden under Brunner prong 2 is affirmed.

    B.    Issue II: Motions to Seal

Traversa challenges the Bankruptcy Court's collateral rulings on various motions to seal documents filed in the proceedings. Traversa filed numerous motions to seal, which were denied in full or in part. Traversa does not specify which of these rulings he appeals from. As noted above, the Bankruptcy Court denied motions to seal based on 11 U.S.C. section 107(b)(2), which pertains to sealing "scandalous or defamatory matter," holding that documents containing references to Traversa's medical conditions did not meet this standard. Bankruptcy Doc. Nos. 105, 151. However, in an effort to limit any risk of injury from disclosure, the Bankruptcy Court did enter a confidentiality order limiting disclosure of discovery materials by the parties (id.), and it limited remote access via PACER or CM/ECF to a document containing "sensitive information," Bankruptcy Doc. No. 283.

Appellee ECMC claims that some of these rulings were previously affirmed by this court. Appellee's Brief (Doc. No. 15) at 34. However, a review of the record shows that Traversa's previous attempts to appeal were not heard on the merits. D. Conn. Case No. 07-MC-138 (MRK), Doc. No. 14 (Ruling dismissing appeal for lack of jurisdiction), 34 (Second Circuit Mandate dismissing appeal for lack of jurisdiction); D. Conn. Case No. 07-MC-186 (MRK), Doc. No. 13 (Ruling denying leave to appeal).

Traversa contends that documents, containing or addressing his own contentions about his psychological conditions and disabilities, should have been sealed pursuant to 11 U.S.C. section 107(b)(2), which provides that the court "shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Traversa argues that his own claims about himself are defamatory, regardless of the fact that he made them and that they are true. Addressing this argument below, the Bankrupcy Court noted a "strong public policy in favor of open court records" and, therefore, interpreted "defamatory" in section 107(b)(2) to refer only to "actionable defamation," i.e., statements that are not only defamatory, but false. Bankruptcy Doc. No. 151 at 8. On appeal, Traversa contends that the documents should have been sealed because they are "defamatory" in the broader sense of being hurtful to one's reputation. He also claims that they are scandalous. Because Traversa challenges the Bankruptcy Court's non-discretionary application of a legal standard to the facts, the court's standard of review is de novo. See Curiston, 351 B.R. at 27.

The Second Circuit has relied on the narrow, "actionable defamation" interpretation of section 107(b)(2). In Kalil v. Utica City School Dist., the Second Circuit affirmed a Bankruptcy Court's decision not to seal where the allegedly defamatory

Appellee ECMC claims that some of these rulings were previously affirmed by this court. Appellee's Brief (Doc. No. 15) at 34. However, a review of the record shows that Traversa's previous attempts to appeal were not heard on the merits. D. Conn. Case No. 07-MC-138 (MRK), Doc. No. 14 (Ruling dismissing appeal for lack of jurisdiction), 34 (Second Circuit Mandate dismissing appeal for lack of jurisdiction); D. Conn. Case No. 07-MC-186 (MRK), Doc. No. 13 (Ruling denying leave to appeal).

Traversa contends that documents, containing or addressing his own contentions about his psychological conditions and disabilities, should have been sealed pursuant to 11 U.S.C. section 107(b)(2), which provides that the court "shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Traversa argues that his own claims about himself are defamatory, regardless of the fact that he made them and that they are true. Addressing this argument below, the Bankrupcy Court noted a "strong public policy in favor of open court records" and, therefore, interpreted "defamatory" in section 107(b)(2) to refer only to "actionable defamation," i.e., statements that are not only defamatory, but false. Bankruptcy Doc. No. 151 at 8. On appeal, Traversa contends that the documents should have been sealed because they are "defamatory" in the broader sense of being hurtful to one's reputation. He also claims that they are scandalous. Because Traversa challenges the Bankruptcy Court's non-discretionary application of a legal standard to the facts, the court's standard of review is de novo. See Curiston, 351 B.R. at 27.

The Second Circuit has relied on the narrow, "actionable defamation" interpretation of section 107(b)(2). In Kalil v. Utica City School Dist., the Second Circuit affirmed a Bankruptcy Court's decision not to seal where the allegedly defamatory

Appellee ECMC claims that some of these rulings were previously affirmed by this court. Appellee's Brief (Doc. No. 15) at 34. However, a review of the record shows that Traversa's previous attempts to appeal were not heard on the merits. D. Conn. Case No. 07-MC-138 (MRK), Doc. No. 14 (Ruling dismissing appeal for lack of jurisdiction), 34 (Second Circuit Mandate dismissing appeal for lack of jurisdiction); D. Conn. Case No. 07-MC-186 (MRK), Doc. No. 13 (Ruling denying leave to appeal).

Traversa contends that documents, containing or addressing his own contentions about his psychological conditions and disabilities, should have been sealed pursuant to 11 U.S.C. section 107(b)(2), which provides that the court "shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." Traversa argues that his own claims about himself are defamatory, regardless of the fact that he made them and that they are true. Addressing this argument below, the Bankrupcy Court noted a "strong public policy in favor of open court records" and, therefore, interpreted "defamatory" in section 107(b)(2) to refer only to "actionable defamation," i.e., statements that are not only defamatory, but false. Bankruptcy Doc. No. 151 at 8. On appeal, Traversa contends that the documents should have been sealed because they are "defamatory" in the broader sense of being hurtful to one's reputation. He also claims that they are scandalous. Because Traversa challenges the Bankruptcy Court's non-discretionary application of a legal standard to the facts, the court's standard of review is de novo. See Curiston, 351 B.R. at 27.

The Second Circuit has relied on the narrow, "actionable defamation" interpretation of section 107(b)(2). In Kalil v. Utica City School Dist., the Second Circuit affirmed a Bankruptcy Court's decision not to seal where the allegedly defamatory

statements were contained in written orders from another legal proceeding. The Second Circuit held that those statements were not "defamatory" within the meaning of section 107(b)(2), not because they were not harmful, but because they would be subject to the legal privilege for statements made in court proceedings. 301 F. App'x 29, 30 (2d Cir. 2008) ("Those orders are not defamatory because statements made in judicial proceedings are absolutely privileged under New York law."); see also In re Neal, 461 F.3d 1048, 1054 (8th cir. 2006) ("[I]njury or potential injury to reputation is not enough to deny public access to court documents."); In re Gitto Global Corp., 422 F.3d 1, 11 (1st Cir. 2005) ("Papers filed in the bankruptcy court do not fall within the § 107(b)(2) exception merely because they would have a detrimental impact on an interested party's reputation."). Therefore, documents reflecting the debtor's own contentions about his medical conditions are not "defamatory" within the meaning of section 107(b)(2).

Nor is there any serious argument that they are "scandalous." See In re Neal, 461 F.3d at 1054 (Where material was filed for a proper purpose, "[t]he unintended, potential secondary consequence of negative publicity . . . is regrettable but not a basis for sealing the filing."); In re Mesaba Aviation, Inc., 418 B.R. 756, 763 (B.A.P. 8th Cir. 2009) ("[S]urely [section 107(b)(2) was] not intended to protect persons from filing papers that contain information that is scandalous or defamatory to themselves."). Therefore, section 107(b)(2) does not require sealing or any other protection.

In the alternative, Traversa argues that the Bankruptcy Court should have sealed the documents pursuant to 11 U.S.C. section 107(c)(1), which provides that the "bankruptcy court, for cause, may protect an individual" with respect to certain kinds of

information the disclosure of which would "create an undue risk of . . . unlawful injury to the individual." The Bankruptcy Court's exercise of the discretion provided by section 107(c)(1) is reviewed for abuse of discretion. See In re Dana Corp., 574 F.3d 129, 145 (2d Cir. 2009) ("The bankruptcy court's discretionary rulings . . . are reviewed for abuse of discretion.").

Here, the Bankruptcy Court noted that little or no evidence of the alleged medical conditions would appear on the CM/ECF system because the merits were to be addressed at a trial rather than summary judgment. Bankruptcy Doc. No. 151, at 8-9. The Bankruptcy Court therefore concluded that any remaining risk could be addressed through a confidentiality order limiting disclosure of discovery documents. Id. Subsequently, applying Rule 9037 of the Federal Rules of Bankruptcy, the court provided more limited protection to a handful of documents, such as limiting remote access via CM/ECF, in order to limit any risk that future employers might access the documents and discriminate against Traversa. Bankruptcy Doc. No. 283. These protection measures present a reasonable and tailored response to the risk.[2] The court cannot conclude that the response of the Bankruptcy Court constituted an abuse of discretion. Therefore, the Bankruptcy Court's rulings on Traversa's motions to seal are affirmed.

### C. Remaining Issues

Each of the remaining issues requires little discussion. In Issue III, Traversa

---

[2] It is unclear that the extensive redacting and sealing sought by Traversa would have been more effective in removing his concern. Potential employers who do go to the trouble of accessing the bankruptcy file would hardly be comforted by a heavily redacted record, and their speculation could be worse than what appears on the record.

attempts to appeal from a supposed ruling on the third prong of the Brunner standard, the "good faith" prong. Appellant's Br. at 42-43. However, having found that Traversa had failed to meet his burden under prong 2, the Bankruptcy Court held that it was "neither necessary nor appropriate to consider the 'good faith' prong." Decision at 21. The Bankruptcy Court's decision not to consider the "good faith" prong was proper, and there is no need to consider Traversa's arguments with respect to this prong on appeal. See In re Faish, 72 F.3d 298, 306 (3d Cir. 1995) ("[W]e conclude that Faish failed to satisfy the first element of the Brunner test. Accordingly, we need not decide whether she would have satisfied the second and third elements of our new standard.").

In Issue IV, Traversa claims that the Bankruptcy Court erred in permitting evidence relating to an offer of compromise from the Student Loan Corporation, a creditor not involved in this appeal. See Findings at 4-7. The evidence was relevant solely to the good faith prong. Because the Bankruptcy Court did not reach the good faith prong and did not rely on this evidence, the court need not consider this issue.

In Issue V, Traversa requests that the court "reverse the ruling of the bankruptcy court" on prong one. Appellant's Br. at 51. The request is puzzling, as the Bankruptcy Court ruled in Traversa's favor on this prong. Decision at 19. Traversa lacks standing to appeal a decision in his favor. See In re D.A. Elia Const. Corp., 295 Fed. App'x 394, 395 (2d Cir. 2008) ("[Debtor] lacks standing to make any argument that the District Court set attorney's fees lower than those set previously, because having to pay less in attorney's fees is not an injury."). Moreover, because Traversa failed to meet his burden of proof under prong two, there is no need to revisit the Bankruptcy Court's holding in his favor on prong one. See Faish, 72 F.3d at 306.

## IV. CONCLUSION

The judgment of the Bankruptcy Court is hereby **AFFIRMED**. The Clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 5th day of November, 2010.


    /s/ Janet C. Hall
Janet C. Hall
United States District Judge